## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARRON JACKSON
Washington, D.C.  20002
513  12th Street, NE
Washington, DC 20002

Plaintiff

v.                                                    Civil Action No.:

GOVERNMENT OF THE DISTRICT
OF COLUMBIA
SERVE:
Mayor Vincent Gray
Designee Darlene Fields
Civil Division, Room 441S
441 4th Street, NW
Washington, DC 20001

and

DANIEL KELLY
BADGE # 4010
101 M Street, SW
Washington, DC 20024
Phone: (202) 698-0555

Defendants

## COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF AND EQUITABLE RELIEF AND DECLARATORY RELIEF AND JURY DEMAND

### (§ 1983 Civil Rights Claims)

## INTRODUCTION

**1.**       Plaintiff Barron Jackson files this complaint against defendant

Daniel Kelly, an officer of the District of Columbia Metropolitan Police

Department ("MPD"), in his individual capacity, and against defendant

Government of the District of Columbia ("District of Columbia" or the "District").

**2.**       This is an action for damages and other relief described below

brought by Mr. Jackson because of injuries suffered by him when Officer Kelly,

acting pursuant to a pattern and practice of the District of Columbia, seized,

detained, and arrested him without probable cause and without any reason at all on

2/21/2010 on E or F Street, NE, between 13th and 14th Street, NE, in Washington,

DC.

**3.**       Mr. Jackson brings this action for false arrest under 42 U.S.C. §

1983 to enforce his rights under the Fourth Amendment and the common law of

the District of Columbia against the government of the District of Columbia (the

"District of Columbia" or the "District") and Officer Kelly.

**4.**       This is also an action against the District of Columbia because of

injuries suffered by Mr. Jackson when Officer Kelly and other officers pursuant to

policies and practices of the District of Columbia by forcing him to choose

between "post and forfeit" for "disorderly conduct – profane language" or

spending a night in jail followed by transport to the Superior Court for "no-

papering[1]" of his "disorderly conduct – profane language" charge.

**5.**         Mr. Jackson brings this action against the Government of the District

of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §

1983, to enforce the Fourth and Fifth Amendments, for injuries suffered by him

because of the "post and forfeit" claim.

**6.**         Mr. Jackson also brings her "post and forfeit" claim against the

Government of the District of Columbia under the common law tort of conversion

for loss of money and other damages suffered by her.

## Jurisdiction And Venue

**7.**         This Court has original jurisdiction over the individual claims

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**9.**         This Court has supplemental jurisdiction over the common law claims

pursuant to 28 U.S.C. § 1367.

---

[1] "No-papering" means the prosecuting authority declines to "paper" (prosecute) the charge.  In the District of Columbia in virtually all cases an MPD officer must meet face to face with a prosecutor from the Office of the Attorney General to "paper" a case brought under a D.C. statute, that is provide information to the prosecutorial staff about which facts support the arrest or the charge so the prosecuting agency can decide whether to decline the charge or prosecute the charge.

10.        Venue is appropriate in this District.  Each of the claims for relief

arose in this judicial district and all events described herein occurred in the District

of Columbia.

## FACT ALLEGATIONS

### Plaintiff

11.        Mr. Jackson is a life-long resident of the District of Columbia.

12.        Mr. Jackson is a veteran.

13.        He served active duty in the United States Army from 1981 to 1985.

14.        He was active duty reserves from 1999 to 2002 when he was an

"MP," that is, a military police officer.

15.        He was regular reserves from 2002 to 2006 when he was also an

"MP."

### Defendants

16.        The District of Columbia is a municipal corporation capable of

being sued under D.C. Code § 1-102.

17.        Officer Daniel Kelly is an officer of the District's Metropolitan

Police Department assigned to the First District.

18.        During all events described herein, all police officers referred to

herein, named or unnamed, including but not limited to Officer Kelly, were police

officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## The event

19.          On the afternoon of Sunday February 21, 2010 at about 2:00 pm or 3:00 pm Mr. Jackson was a passenger on the Metro bus (B2) heading to his mother's house to take her some bread pudding.

20.          The bus, having been diverted from its usual route, was traveling west on E Street, NE having passed 14th Street, NE moving in the direction of 13th Street, NE.

21.          As the bus traveled down E Street it had to stop because an MPD police car was parked on the left side of the street with the rear end of the car poking out into the street partially blocking the street.  A Caucasian officer was standing near the car.

22.          The bus could have squeezed by to the right except another Caucasian officer was standing in the street to the right of the car speaking to an African American man who was standing on the sidewalk.

**23.**     The bus driver stopped the bus about 15 feet from the officer to wait for the officer in the street to move.

**24.**     The bus, with many passengers, waited 10 or 15 minutes for the officer to get out of the street to allow the bus to pass.

**25.**     Mr. Jackson, based on his many years' experience as an MP, could tell that the officer was simply talking to the civilian, not engaged in an arrest or detention or a tense situation.

**26.**     Growing tired of waiting, Mr. Jackson asked to be let off the bus and the driver let him off.

**27.**     As he walked toward 14th Street and the officer in the street Mr. Jackson, who is African American, called to the officer (in a normal volume) by the car, "Why don't you move the damn car?"

**28.**     The officer snapped back, "What did you say?"

**29.**     Mr. Jackson replied, "I said why don't you move the f*cking car out of the street so the bus can get by?"

**30.**     "You can't say that," snapped the officer.

**31.**     "I can say anything I want to," retorted Mr. Jackson.  "This is the United States!"

**32.**          Although Mr. Jackson used profanity he never made any movement toward either of the officers or raised his hands to them.

**33.**          Nor did he direct his comments to anyone but the two officers.

**34.**          Mr. Jackson did not annoy, disturb, or offend anyone on the bus or the man to whom he officer blocking the street had been speaking to.

**35.**          Nor were his words "fighting words."

**36.**          Both officers then approached Mr. Jackson and stood him up on the side walk.

**37.**          Officer Kelly asked, "Do you have anything on you we should know about?"

**38.**          "No," Mr. Jackson replied.

**39.**          The officers made him pull his pockets out so the pockets were hanging out.

**40.**          They then frisked Mr. Jackson but found nothing.

**41.**          At this point two other police cars came around the corner from 14th Street and pulled up E Street.

**42.**          Those officers jumped out.

**43.**          At this point Officer Kelly threw Mr. Jackson down on the sidewalk and put his knee in his back.

44.         The officers then cuffed Mr. Jackson.

45.         Several people on the bus protested the officers' treatment of Mr. Jackson but none of them made any move toward the officers or menaced them.

46.         The man on the sidewalk with whom the officer had been speaking when the bus arrived gave Mr. Jackson his contact information and offered to serve as a witness.

47.         At this point the other officer noticed that Mr. Jackson had tattoos on his arms indicating he was a member of the US Army shooting team and the officer began to apologize saying things got off on the wrong foot.

48.         Officer Kelly continued to abuse Mr. Jackson verbally saying things like, "oh they're gonna love you in jail."

49.         Officer Kelly and his partner took Mr. Jackson to "1D" where they held him for several hours.

50.         They gave him a choice between paying $35.00 to "post and forfeit" for "disorderly conduct – profane language[2]" or spending the night in jail for transport to Superior Court the next day.

51.         The MPD officers did not offer citation release, posting collateral (without forfeiting), or release on the Detention Journal.

---

[2] The PD 67, the "Bond and Collateral Receipt," says the charge was "disorderly conduct – profane language" and the Superior Court CourtView docket entry says he was charged under D.C. Code § 22-1321.

**52.**        Mr. Jackson was entitled to release on the Detention Journal because he was arrested without probable cause.

**53.**        Mr. Jackson was entitled to post (without forfeiting) under 23 D.C. Code § 2110(a).

**54.**        Mr. Jackson was entitled to citation release under 23 D.C. Code § 2110(b)(1).

**55.**        Mr. Jackson did not commit the elements of the offense nor did he commit any other offense.

**56.**        There was no probable cause to arrest Mr. Jackson on any offense.

**57.**        Investigation indicates that Officer Kelly never intended to refer Mr. Jackson's arrest to the prosecuting authority for prosecution.

**58.**        He arrested Mr. Jackson as punishment and to coerce him into "post and forfeiting."

**59.**        The officers released Mr. Jackson several hours after he arrived at 1D.

## Disorderly Conduct Arrests by the MPD

**60.**        The District of Columbia, through the MPD, has a long history of making arrests for disorderly conduct that are not supported by probable cause.

61.        The District of Columbia, through the MPD, has a long history of arresting people for any reason or no reason, and then taking the people to the station and funneling them into the "post and forfeit" procedure by giving them two choices: (1) "post and forfeit" for disorderly conduct; or (2) spend a night or two in jail awaiting transport to the Superior Court where their cases will be "no-papered" because the arrests are not supported by probable cause.

62.        The District of Columbia has a serious problem with its officers arresting persons, especially persons who are members of discrete and insular minorities, without probable cause and then forcing them to "post and forfeit" on "disorderly conduct – loud and boisterous."  See e.g., Ricks v. District of Columbia, 05-1756 (HKK) (MPD officer arrests homeless man without probable cause, and then forces him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); Huthnance v. District of Columbia, 06-1871 (RCL) (MPD officers arrest tall woman without probable cause, describe her as "female impersonator" on the arrest report, and force her to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering her choice between night in jail and "post and forfeiting"); Tuma v. District of Columbia, 10-1248 2010 (JB)(MPD officer arrests man without probable cause, calls him a faggot, and then forces him to "post and

forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); Dormu v. District of Columbia, 08–00309 (HHK)(MPD officers arrest African American surgeon, and force him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); Fox v. District of Columbia, 10-2118 (ABJ)(swarm of MPD officers arrested 63 year old man waiting for his wife outside CVS without probable cause, terrorized his wife, detained him for nine hours, and forced him to "post and forfeit" on "disorderly conduct – loud and boisterous" by offering him choice between night in jail and "post and forfeiting"); Hodges v. District of Columbia, 12-1900 (GK)(MPD officers arrested Ms. Hodges' for protesting their mistreatment of her then husband); Dingle v. District of Columbia, 571 F.Supp.2d 87, 96 (D.D.C. 2008)(officers used force and intimidation to try to get teenager to pay ticket issued under "citation post and forfeit" procedure rather than request trial date).

63.        Investigation indicates that the MPD officers make arrests without probable cause and then charge people with disorderly conduct with no expectation that the District will pursue any charges against these persons.

64.        Investigation indicates that the District of Columbia, through the Metropolitan Police Department, maintains a policy or practice of offering only

post and forfeit to many minor misdemeanor arrestees when the MPD has no

expectation that the District of Columbia Attorney General will pursue

misdemeanor charges, rather than also offering citation release or other forms of

station house release. This policy or practice generates money and curtails scrutiny

of improper arrests.

65.        The District of Columbia has a longstanding practice of making

arrests for disorderly conduct, especially DC Code § 22-1321(1) ("annoying

others") and DC Code § 22-1321(3) ("loud and boisterous conduct"), that are not

supported by probable cause and continued at the least until February 2011 when

the District enacted a new disorderly conduct statute and the MPD allegedly began

training its officers in the new statute.

66.        An analysis of PD-163 arrest reports for disorderly conduct (loud

and boisterous) from January 1, 2005 through May 31, 2005 conducted by Dr.

James Ginger[3] and Timothy J. Longo, Sr. revealed serious problems with police

operations, report writing, records management, training, and supervisory

processes within MPD regarding arrest for disorderly conduct (loud and

boisterous).  Ps. Ex. # 16, Longo report, ¶ 93.

---

[3] Dr. James Ginger and Timothy J. Longo, Sr. conducted their analysis and gave testimony in the case of Huthnance v. District of Columbia, 06-1871 (RCL).  See Huthnance v. District of Columbia, 793 F.Supp.2d 183, 197-200 (D.D.C. 2011)(post trial motions) *on appeal*.

67.         Moreover, they found the MPD has done very little analysis or

review of disorderly conduct arrests to see if the same problems prevail and very

little training to remedy past problems.

68.         Since receiving the CCRB report in 2003, MPD has failed to
accomplish critically important tasks. Despite their assertion that training
has been improved with regard to disorderly conduct and disorderly conduct
arrests, there has been little substantive change to the training materials. Not
even the updated training video or the announcement from Chief Ramsay,
which they previously purported to have made, was completed. **Most
important, from my perspective, is the failure to examine disorderly
conduct arrests made by MPD officers**.

Longo Report, ¶ 85 (emphasis added).

69.         The District, according to the Longo Report, as of 2009, still has not

conducted any meaningful analysis of disorderly conduct-loud and boisterous

arrests to confirm they are being made on probable cause.  Longo Report, ¶ 102.

70.         Mr. Longo stated: "The fact that the department waited at least 5

years to begin the process of conducting any analysis whatsoever as to disorderly

conduct arrests causes me tremendous concern."  Id.

71.         The MPD did give a draft report to the chief of MPD in 2009.  But,

of the 3,800 disorderly conduct arrests in 2008 the MPD identified only 72

incidents for review.  Id. ¶ 87.  But, the MPD could not locate police reports (PD-

163) of those reports.  Id. at ¶ 88.

72.         Dr. Ginger, quoted in the Long Report, specifically recognized the

draft report's "serious methodological flaws, including a failure to base the sample

on clearly identified needs, and a flawed sample size." Id. at ¶ 96.

73.         MPD chose to sample cases that have nothing to do with the
offenses about which the CCRB expressed concern. For example, rather than
limiting the sample's focus to disorderly conduct cases under § 22-1321,
Inspector Williams focused on unrelated offenses, such as possession of an
open container of alcohol (.POCA.). These unrelated offenses overwhelm
the sample used. For instance, only 7 of the cases looked at by Inspector
Williams were under § 22-1321, but 36 were for POCA.

Longo Report, ¶ 96.

74.         The Longo report also found that the MPD did not adequately

supervise disorderly conduct arrests.  Longo Report, ¶¶ 115 to 121.

75.         The MPD also inadequately trained officers in disorderly conduct

arrests.  Longo Report ¶¶ 122 to 146.

76.         As Dr. Ginger stated in his report, "it is apparent that weak training,

poor police arrest and reporting practices, weak supervision, and the practice of

post-and-forfeit, have combined to create a perfect storm."  Quoted in Longo

report, ¶ 147.

77.         James Ginger reviewed 341 PD 163s (the PD 163 is the MPD

Arrest/ Prosecution form which collects the arrestee's biographical data and other

data and a narrative of the event containing the probable cause facts) and found that 62% of the most problematic arrests for disorderly conduct were found in arrests that resulted in release through the post-and-forfeit procedure. Id. at ¶113.

78.         The District was on notice of a widespread problem of improper disorderly conduct arrests by MPD officers.

79.         Both experts (Longo and Ginger) agreed that, had the District reviewed the PD-163s in a systematic fashion, these deficiencies they described and the larger problem of unconstitutional arrests that they indicate—would have been identified.

80.         Moreover the District and the MPD should have discovered the deficiencies Longo and Ginger described and the larger problem of unconstitutional arrests that they indicate through reviewing the PD163s for disorderly conduct arrests, as the CCRB Report recommended, even without the CCRB's recommendation.

81.         The District was deliberately indifferent to a known, widespread problem of improper disorderly conduct arrests by MPD officers.

82.         The District never conducted a sampling study of disorderly conduct arrests during the class period, even though the CCRB Report stated that "this review is critical."

**83.**        The MPD chief never made a videotaped message emphasizing the importance of properly applying the disorderly conduct statute.

**84.**        The pre-existing dated and ineffective disorderly conduct training video was not revised.

**85.**        No roll call module on disorderly conduct was presented to incumbent officers in June 2005 or at any other time up to at least February 2011.

**86.**        No in-service training on disorderly conduct was provided to incumbent officers until 2007, and the in-service training had no new or different information from what had been in the deficient academy training materials for years.

**87.**        There rates of arrests for disorderly conduct is much higher in the District than in comparable jurisdictions.

**88.**        Most disorderly conduct arrests in the District are resolved through the "post and forfeit" procedure.

**89.**        A jury found in Huthnance v. District of Columbia, 06-1871 (RCL) that the District was deliberately indifferent to a known, widespread problem of improper disorderly conduct arrests by MPD officers.  Huthnance v. District of Columbia, 793 F.Supp.2d 183, 197-200 (D.D.C. 2011).

90.        Testimony in the <u>Huthnance</u> trial indicated the District's deliberately

indifference to disorderly conduct arrests without probable cause continued at least

through and including 2009.

91.        The District did not appeal that finding.  <u>Huthnance v. District of

Columbia</u>, District of Columbia Circuit Court of Appeals, Case # 11-7096,

appellant District of Columbia's brief, Document # 1379602, filed 6/19/12.

92.        Investigation indicates that the pattern and practice and the District's

deliberately indifference to disorderly conduct arrests without probable cause

continued at least through and including 2010.

## **"<u>Station House Releases</u>[4]" of Persons Arrested by the MPD**

93.        Pursuant to MPD GO 502.05, "The Use of the Detention Journal"

("Detention Journal release"), the MPD is authorized to release from the station

houses arrested persons whom the MPD has decided not to charge, including

persons whose arrests or charges are not supported by probable cause.

94.        District of Columbia statutes (D.C. Code § 23-1110 (a) and (b)(2);

D.C. Code § 16-704(a)) authorize the MPD to make two types of "station house"

---

[4] "Station house" release is release of an arrestee directly from an MPD district station or other MPD booking facility as opposed to transporting them to Superior Court for presentment and a release determination hearing or a "no-papering" decision which generally takes place the next day, or the day after that if the arrest is made on a Saturday.

releases of arrestees whom the MPD intend to charge with offenses: (1) release on citation, if the arrestees meet certain criteria designed to screen out flight risks and persons who are a danger to the community; and (2) release on "bail or collateral."

95.     Based on the District's answers to interrogatories in the case of Huthnance v. District of Columbia, 06-1871 (RCL)(JMF) and other data the MPD virtually never makes releases upon "bail or collateral", that is where a person is released upon payment of money or posting of a bond to secure a promise to appear at a subsequent court date.

96.     Based on the District's answers to interrogatories in the case of Huthnance v. District of Columbia, 06-1871 (RCL)(JMF) and other data during the class period the MPD released fewer than ten arrestees per year on simple posting of collateral bond.

97.     Based on the District's answers to interrogatories in the case of Huthnance v. District of Columbia, 06-1871 (RCL)(JMF) and other data during the class period the MPD virtually never released  on "citation" release persons arrested on or charged with offenses such as disorderly conduct prior to February 2011.

**98.**         The MPD does release arrestees from the station houses via the

"post & forfeit" release procedure authorized by D.C. Code § 5-335.01 and

described below.

## The "Post & Forfeit" Procedure

**99.**         In 2005 the Mayor and City Council enacted a statute ("post and

forfeit" statute) ratifying and defining the "post and forfeit" procedure and setting

criteria for the implementation of the "post and forfeit" procedure.  D.C. Code § 5-

335.01 (effective on April 13, 2005).

**100.**         The purpose of the "post and forfeit" procedure is to provide a way

for the District to collect fines without having to provide prosecutorial review or

judicial process such as court supervised resolutions such as diversion or trials to

people who have been charged with offenses.

**101.**         The "post and forfeit" procedure is administered by the MPD

according to MPD general orders.

## How the MPD implements the "post and forfeit" procedure

**102.**         In practice, the MPD applies the "post and forfeit" procedure to

virtually all persons arrested on or charged with "disorderly conduct."

103.         Moreover, based on investigation and interrogatory responses of the District in the <u>Huthnance</u> case persons arrested on or charged with "disorderly conduct" are virtually never offered Detention Journal release, citation release, bond release, or collateral release by the MPD.

104.         Virtually the only options offered to persons arrested on or charged with "collateral offenses" by the MPD at the station house are the "post and forfeit" procedure at the station or transport to the Superior Court for "no-papering" which generally takes place the next day, or next Monday if the person is arrested after "cut off" (3:00 pm) on Saturday.

## How a person elects the "post and forfeit" procedure

105.         The MPD do give a PD 67 form (Collateral/ Bond Receipt) to persons electing the "post and forfeit" procedure.

106.         The MPD does not provide arrestees with the elements of the offense they are charged with to review before electing the "post and forfeit" procedure.

107.         The MPD does not inform arrestees whether the MPD believes the arrestees' arrests or charges are supported by probable cause.

108.          The MPD does not provide arrestees with a copy of the PD 163 narrative setting out the facts the MPD contend provide probable cause or any

other type of probable cause statement to review before electing the "post and forfeit" procedure.

### The MPD Funnels Arrestees into the "Post and Forfeit" Procedure

**109.**        The MPD enforces the disorderly conduct statute in such a way that the arrest, detention and release under the "post and forfeit" procedure is itself the penalty the MPD imposes for conduct for which it makes the disorderly conduct arrests.

**110.**        The Mayor and the City Council are aware that the MPD funnels arrests for disorderly conduct and other collateral offenses into the "post and forfeit" procedure.

**111.**        The Mayor and the City Council are aware and acquiesce in the MPD's use of arrests and the "post and forfeit" procedure as a way of shielding[5] its practice of making unfounded arrests for disorderly conduct and other collateral offenses from prosecutorial or judicial review of individual arrests.

---

[5] Arrests disposed of through "post and forfeit" do not get referred to the prosecutor for prosecution so they get no prosecutorial or judicial review.  Longo Report ¶112.

112.        The MPD funnels arrestees into the "post and forfeit" procedure because the "post and forfeit" procedure is the only station house release option offered to arrestees arrested on collateral offenses including disorderly conduct.

113.        James Ginger reviewed 341 PD 163s ¶ 94 and found that 62% of the most problematic arrests for disorderly conduct were found in arrests that resulted in release through the post-and-forfeit procedure.  Id. at ¶113.

## SUBSTANTIVE ALLEGATIONS FOR MR. JACKSON'S CLAIMS

## Claim 1 – 42 U.S.C. § 1983, Fourth Amendment (Officer Kelly)

114.        Mr. Jackson adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

115.        This claim is filed against Officer Kelly in his individual capacity.

116.        Officer Kelly seized Mr. Jackson and arrested and detained him without probable cause for any offense.

117.        In seizing and detaining and arresting Mr. Jackson without probable cause Officer Kelly acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mr. Jackson' well-established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

**118.**　　　As a direct and proximate result of this violation, Mr. Jackson

suffered a deprivation of constitutional rights, loss of liberty, and suffered

substantial physical and mental injuries, and will continue to suffer severe mental

distress.

## Claim 2 – 42 U.S.C. § 1983, Fourth Amendment (defendant District of Columbia)

**119.**　　　The Plaintiff adopts by reference the contents of the preceding

paragraphs as if fully set forth herein.

**120.**　　　Officer Kelly seized Mr. Jackson and arrested and detained him

without probable cause for any offense.

**121.**　　　The District of Columbia's deliberate indifference to its officers'

practice of making disorderly conduct arrests without probable cause was the

motivating force behind Mr. Jackson's arrest.

**122.**　　　As a direct and proximate result of this violation, Mr. Jackson

suffered a deprivation of constitutional rights, loss of liberty, and suffered

substantial physical and mental injuries, and will continue to suffer severe mental

distress.

## Claim 3 – common law False Arrest (Officer Kelly)

**123.**         Mr. Jackson adopts by reference the contents of the preceding

paragraphs as if fully set forth herein.

**124.**         In arresting Mr. Jackson, Officer Kelly acted intentionally or

maliciously, unjustifiably, and unreasonably in violation of Mr. Jackson's well-

established right under the District of Columbia common law to be free from false

arrest.

**125.**         As a direct and proximate result of this violation, Mr. Jackson

suffered a deprivation of rights, loss of liberty, was battered pursuant to the arrest,

and suffered substantial physical, mental, and economic injuries, and will continue

to suffer severe mental distress.

## Claim 4 (Post & Forfeit Claim) (§ 1983 Liability of District of Columbia for Violations of Fourth Amendment)

**126.**         Mr. Jackson adopts by reference the contents of the preceding

paragraphs as if fully set forth herein.

**127.**         The District of Columbia, through its MPD, pursuant to D.C. Code §

5-335.01, has a policy of charging persons arrested on collateral offenses sums of

money (ranging between $35.00 and $1,000.00) to resolve their cases at the station

pursuant to the "post and forfeit" procedure and putting the money in its general

revenue.

**128.**      D.C. Code § 5-335.01 implements an officially adopted policy promulgated by the Mayor and the City Council.

**129.**      The MPD implements the policy as follows: it arrests persons without probable cause, charges them with "disorderly conduct – loud and boisterous," or some other version of disorderly conduct, then funnels them into the "post and forfeit" procedure" procedure by forcing them to choose between (a) "post and forfeiting" or (b) spending a night in jail followed by transport to Superior Court for "no-papering" of their charges, because the District does not release them under the Detention Journal or offer them any other station house release option such as posting (without forfeiting) bond or collateral or citation release.

**130.**      This policy and practice constitutes an unreasonable seizure under the Fourth Amendment and so as implemented D.C. Code § 5-335.01 is unconstitutional.

**131.**      The District's policy and practice was the moving force behind the violation of Mr. Jackson Fourth Amendment rights.

**132.**      Accordingly, Mr. Jackson is entitled to damages to be determined at trial, and Mr. Jackson is entitled to the other relief set forth below.

## Claim 5

### (§ 1983 Liability of District of Columbia for Violations of *Substantive* Fifth Amendment Rights of Mr. Jackson)

**133.**         Mr. Jackson adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

**134.**         D.C. Code § 5-335.01 implements an officially adopted policy promulgated by the Mayor and the City Council.

**135.**         The MPD implements the policy as follows: it arrests persons without probable cause, charges them with "disorderly conduct – loud and boisterous," or some other version of disorderly conduct, then funnels them into the "post and forfeit" procedure" procedure by forcing them to choose between (a) "post and forfeiting" or (b) spending a night in jail followed by transport to Superior Court for "no-papering" of their charges, because the District does not release them under the Detention Journal or offer them any other station house release option such as posting (without forfeiting) bond or collateral or citation release.

**136.**         Mr. Jackson had a fundamental right in his $35.00.

**137.**         The District of Columbia deprived him of that right without any basis.

138.        Moreover, the District's policy and practice of forcing persons such

as Mr. Jackson who are arrested without probable cause and then forced to "post

and forfeit" on disorderly conduct bears no rationale relationship the District may

have in the "post and forfeit" procedure.

139.        The District's policy and practice was the moving force behind the

violation of Mr. Jackson Fifth Amendment substantive due process rights.

140.        Accordingly, Mr. Jackson is entitled to damages and other relief as

set forth below.

## Claim 6
## (§ 1983 Liability of District of Columbia for Violations of *Procedural* Fifth Amendment Rights of Mr. Jackson

141.        Mr. Jackson adopts by reference the contents of the preceding

paragraphs as if fully set forth herein.

142.        D.C. Code § 5-335.01 implements an officially adopted policy

promulgated by the Mayor and the City Council.

143.        The MPD implements the policy as follows: it arrests persons

without probable cause, charges them with "disorderly conduct – loud and

boisterous," or some other version of disorderly conduct, then funnels them into

the "post and forfeit" procedure" procedure by forcing them to choose between (a)

"post and forfeiting" or (b) spending a night in jail followed by transport to Superior Court for "no-papering" of their charges, because the District does not release them under the Detention Journal or offer them any other station house release option such as posting (without forfeiting) bond or collateral or citation release.

144.        The District did not provide pre-deprivation process to Mr. Jackson by notifying him that he was arrested without probable cause and that he was entitled to release on the Detention Journal without "post and forfeiting" and that he was entitled to release on citation release and posting (without forfeiting).

145.         The District did not provide any pre-deprivation process to Mr. Jackson by determining whether he was arrested with probable cause and determining to release him on the Detention Journal without "post and forfeiting" since he was arrested without probable cause.

146.        The District did not provide any post-deprivation process to Mr. Jackson by providing him a refund and damages for his arrest and forced "post and forfeit" because a motion to set aside the forfeiture under D.C. Code § 5-335.01(g) reinstates the prosecution and does not provide damages.

147.        Accordingly, Mr. Jackson is entitled to damages and other relief as set forth below.

## Claim 7
## First Amendment violation
## § 1983 Liability of Officer Kelly for Violations of First Amendment Rights of Mr. Jackson)

148.        Mr. Jackson adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

149.        Officer Kelly arrested Mr. Jackson because he used profanity by asking the driver why he did not move the "f*cking" car.

150.        Although Mr. Jackson used profanity he never made any movement toward either of the officers or raised his hands to them.

151.        Nor did he direct his comments to anyone but the two officers.

152.        Mr. Jackson did not annoy, disturb, or offend anyone on the bus or the man to whom he officer blocking the street had been speaking to.

153.        In fact the man to whom the officer blocking the street had been speaking to offered to be Mr. Jackson's witness against the police.

154.        Nor were his words "fighting words."

155.        Officer Kelly violated Mr. Jackson's First Amendment rights by arresting him.

156.          Accordingly, Mr. Jackson is entitled to damages and other relief as set forth below.

## Claim 8
## First Amendment violation
## § 1983 Liability of District of Columbia  for Violations of First Amendment Rights of Mr. Jackson)

157.          Mr. Jackson adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

158.          Officer Kelly arrested Mr. Jackson pursuant to DC Code § 23-1331(1).

159.          His enforcement of the statute was pursuant to a pattern and practice of the MPD in which the District acquiesces.

160.          The statute, as enforced, constitutes the policy of the District of Columbia.

161.          The statute, as applied to Mr. Jackson, violated his First Amendment rights.

162.          The District's policy was the moving force behind the violation.

163.          Accordingly, Mr. Jackson is entitled to damages and other relief as set forth below.

**Claim 9**
**The "post and forfeit" procedure as implemented is void for vagueness**
**(§ 1983 Liability of District of Columbia for Violations of Fifth Amendment**
**Rights of Mr. Jackson)**

164.        The preceding paragraphs are incorporated and restated as if stated fully herein.

165.        The District of Columbia, through the MPD, maintains a policy, custom or practice of arresting persons without probable cause and then forcing the persons to "post and forfeit" on "disorderly conduct – loud and boisterous"or some other version of disorderly conduct by forcing them to choose between "post and forfeiting" on "disorderly conduct – loud and boisterous" or spending a night in jail followed by transport to Superior Court for "no-papering" of the charges because the MPD does not offer them any other form of station house release.

166.        Investigation indicates that the MPD officers make arrests without probable cause and then charges people with disorderly conduct with no expectation that the District will pursue any charges against these persons.

167.        The District of Columbia maintains a policy, custom or practice of offering post and forfeit to persons arrested on disorderly conduct, without offering

citation release or collateral/ bail release or simple release for lack of probable

cause.

**168.**          Under the Fifth Amendment the "post and forfeit" procedure is valid

only if the **post and forfeit charge** is supported by probable cause regardless of

whether the arrest was supported by some other charge.

**169.**          The post and forfeit procedure results in a fine and a disposition that

"terminates" the prosecution, resembling a plea more than an arrest, and so the

principles underlying rules governing informations under Superior Court Crim.

Rule Proc. 7(a) and (c) (requiring "plain, concise and definite written statement of

the essential facts constituting the offense charged") must apply to the "post and

forfeit" procedure so the accused knows what he is "post and forfeiting" on so, if

other coercive and abusive factors were removed, for example in a "post and trial"

context, he could make an intelligent and voluntary decision whether to post

because different offenses have different elements and different consequences.

**170.**          Construing the post and forfeit procedure to allow the MPD

discretion to take post and forfeit amounts on a charge not supported by probable

cause as the MPD with the acquiescence of the Mayor and City Council do renders

the post and forfeit procedure void for vagueness and overbroad.

**171.**      Allowing the MPD to select any offense for the "post and forfeit" offense, even one not supported by probable cause, leaves the definition of the terms of the post and forfeit procedure to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.

**172.**      Allowing the MPD to arrest for one charge but to "offer" post and forfeit on another unconstitutionally allows the MPD to "set" or "admit" to bail as opposed to taking bail pursuant to a schedule set by the Board of Judges by allowing them to select a charge (with a different bail or collateral amount) the arrestee did not commit and set collateral amounts in violation of D.C. Code § 23-1321(a)(judicial officer sets bail) and D.C. Code § 22-1110 and D.C. Code § 5-335.01(g)(MPD must use collateral amounts established by Board of Judges).

**173.**      Accordingly, Mr. Jackson is entitled to damages and other relief as set forth below.

### Claim 10
### Complete lack of process
### (§ 1983 Liability of District of Columbia for Violations of Fifth Amendment
### Rights of Mr. Jackson)

**174.**      The preceding paragraphs are incorporated and restated as if stated fully herein.

175.         The District of Columbia, through the MPD, maintains a policy, custom or practice of arresting persons without probable cause and then forcing the persons to "post and forfeit" on "disorderly conduct – loud and boisterous"or some other version of disorderly conduct by forcing them to choose between "post and forfeiting" on "disorderly conduct – loud and boisterous" or some other version of disorderly conduct  or spending a night in jail followed by transport to Superior Court for "no-papering" of the charges because the MPD does not offer them any other form of station house release.

176.         Investigation indicates that the MPD officers make arrests without probable cause and then charge people with disorderly conduct with no expectation that the District will pursue any charges against these persons.

177.         The District of Columbia maintains a policy, custom or practice of offering post and forfeit to persons arrested on disorderly conduct, without offering citation release or collateral/ bail release or simple release for lack of probable cause.

178.         Allowing the MPD to use the coercive powers of the criminal justice system by arresting Mr. Jackson without probable cause and then to abandon all procedural protections guaranteed accused persons under the Fifth Amendment by

forcing him to "post and forfeit" on an offense she did not commit violates the due process clause of the Fifth Amendment.

**179.** Accordingly, Mr. Jackson is entitled to damages and other relief as set forth below.

## Claim 11

## Liability of District of Columbia for common law Conversion

**180.** The preceding paragraphs are incorporated and restated as if stated fully herein.

**181.** The District is liable in conversion for illegally taking money from Mr. Jackson pursuant to the "post and forfeit" procedure as applied to him.

**182.** The District, through its agents, participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of Mr. Jackson, (4) in denial or repudiation of his rights thereto.

**183.** At all relevant times its agents were acting within the scope of their employment pursuant to an official policy of the Mayor and the City Council.

**184.** Accordingly, Mr. Jackson is entitled to damages and other relief as described below.

## INDIVIDUAL RELIEF DEMANDS

**WHEREFORE**, Mr. Jackson requests:

**A.**     Compensatory damages and **punitive** damages from Officer Kelly, costs including reasonable attorney's fees, post-judgment interest, and for such other and further relief as the Court may deem just and appropriate.

**B.**     Compensatory damages from defendant District of Columbia, costs including reasonable attorney's fees, post-judgment interest, and for such other and further relief as the Court may deem just and appropriate.

**C.**     Declaratory relief declaring his arrest a nullity and a "detention" rather than an arrest;

**D.**     Declaratory relief sealing all arrest records;

**E.**     Declaratory relief that the "post and forfeit" procedure under D.C. Code § 5-335.01 as applied to him was unconstitutional;

**F.**     Grant a jury trial on all claims so triable;

**G.**     Equitable relief in the form of (1) restitution of the "post and forfeit" amounts paid and (2) sealing her arrest records;

**H.**     An award of costs including attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988; and

**I.**     Such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiff

2020 Pennsylvania Ave, NW
#395
Washington, DC  20004
Phone: 202/824-0700
Email: claibornelaw@gmail.com

## **JURY DEMAND**

Plaintiff demands a jury of six as to all claims so triable.


/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579